IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 03:06cr208-MEF |
| | ) | |
| JASON EDWARD COFIELD | ) | |
| | ) | |

**OBJECTIONS TO FINDING OF THE
MAGISTRATE JUDGE REGARDING SUPPRESSION OF PHYSICAL EVIDENCE**

Comes now the United States of America, by and through Leura G. Canary, United States

Attorney for the Middle District of Alabama, and respectfully objects to the findings of the

Honorable Charles S. Coody, United States Magistrate Judge, regarding the Lee County Sheriff's

Office's lack of probable cause to search a shed owned by Jason Cofield located at 5766 Lee Road

270, Valley, Lee County, Alabama on January 24, 2006.

**FACTS**

On January 24, 2006, Lee County deputies executed a duly authorized Alabama search

warrant on the property identified as 5766 Lee Road 270, Valley, Lee County, Alabama. According

to the search warrant, the individuals and places to be searched were:

> The residence of **Willis "Kenny" Cofield**, alias, **Brian Cofield**, alias, **Jason
> Cofield**, alias and **Michael Cofield**, alias, which is **located at 5766 Lee Road 270,
> Valley, Lee County, Alabama**, and any and all vehicles and/or buildings (above
> ground and below ground) to include two manufactured homes, which is located
> within the curtilage of said property.  (Emphasis added).

In his "Application and Affidavit For Search Warrant," Lee County Sheriff's Investigator

Donnie Surrett identified four individuals (all living on the same property) as likely possessing

controlled substances.  Specifically, Investigator Surrett identified Willis "Kenney" Cofield, Brian

Cofield, Jason Cofield, and Michael Cofield.   Likewise, Investigator Surrett identified two

"manufactured homes" as the primary target of the warrant.  Importantly, Investigator Surrett noted in his application that, "It was determined that the **Cofields' address** is 5766 Lee Road 270, Valley, Lee County, Alabama."

According to Lee County investigators, the entire Cofield family lives on approximately 49 acres of contiguous property in Lee County, Alabama.  Prior to applying for their search warrant, Lee County investigators queried the Alabama Criminal Justice Information Center's ("ACJIC") Law Enforcement Tactical System ("LETS") for current information on Jason Edward Cofield. According to LETS, Jason Edward Cofield's current address was 5766 Lee Road 270, Valley, Lee County, Alabama.  In addition to LETS, Lee County Investigators also queried their own internal database system known as "Bloodhound".  The Bloodhound query identified 5766 Lee Road 270, Valley, Lee County, Alabama as the proper address for the individuals listed in the search warrant.

Significantly, Lee County investigators also visited the Lee County Tax Assessor's Office to check registered land descriptions and tax records for individuals residing at 5766 Lee Road 270, Valley, Lee County, Alabama.  Using this information, Lee County investigators confirmed the location of the property and residents thereof.

Based upon this information, and information previously known to Lee County investigators (including previous visits to the Cofield property), the search warrant specified 5766 Lee Road 270, Valley, Lee County, Alabama, as the place to be searched.  The search warrant also identified, by name, all four individuals known to reside there.  Prior to executing the search, Lee County investigators devised an operational plan for the search of the buildings located on the property.  The operation plan called for at least 40 law enforcement agents to participate in the search.  During the operational briefing, Investigator Surrett instructed all members of the search teams that searches of

any structures would be conducted simultaneously. Indeed, during the search of the Cofield property, Kenny Cofield's home was searched simultaneously with the search of Jason Cofield's manufactured home.

As a result of this duly authorized and executed search warrant, Lee County investigators searched the Cofield property. During the search of Jason Cofield's property, law enforcement recovered firearms and stolen vehicles from a shed. Lee County Sheriff's Office Investigator Keith Jordan was tasked with the search of Jason Cofield's shed. The recovery of these firearms and stolen vehicles from Jason Cofield's shed led to an additional investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Based upon ATF's investigation, agents discovered that Jason Cofield was a convicted felon and could not lawfully possess firearms. Furthermore, ATF discovered that the vehicles recovered from Jason Cofield's property had recently been stolen from the State of Georgia.

Consequently, on August 15, 2006, a two count federal indictment was returned against Jason Cofield. The indictment charged Cofield with being a felon in possession of firearms and possessing stolen motor vehicles that had moved in interstate commerce.

On September 29, 2006, Cofield filed his motion to suppress evidence secured via the January 24, 2006, search warrant. After an evidentiary hearing held on October 27, 2006 and December 11, 2006, the Honorable Charles S. Coody, United States Magistrate Judge, recommended the suppression of the weapons and ATV found in the shed owned by Jason Cofield. The basis for this recommendation was that the search warrant issued by Lee County Circuit Court Judge Jacob Walker on its face did not authorize the search of the trailer and shed owned by Jason Cofield; that exigent circumstances did not exist to permit a warrantless entry into Jason Cofield's shed; and that

the officers who searched the shed did not act in good faith reliance on a signed warrant pursuant to *United Sates v. Leon*, 468 US 897 (1984).

The United States objects the Honorable Magistrate Judge's recommendation on three grounds: 1.) The Honorable Magistrate Judge erred in finding that the search warrant did not authorize a search of the trailer and shed owned by Jason Cofield and any errors in the description of the property to be searched did not invalidate the search warrant; 2.) Even if the search warrant did not authorize a search of Jason Cofield's shed, the officers were permitted to search the shed because exigent circumstances existed; and 3.) The officers who searched Jason Cofield's shed acted in good faith reliance on the search warrant signed by Judge Walker and the Honorable Magistrate Judge incorrectly found that there was a duty on each officer who participates in a search to read the search warrant.

Pursuant to *Nettles v. Wainwright*, 677 F.2d 404 (11th Cir. 1982), the District Court's review of the findings and recommendations of the Magistrate Judge is *de novo*.

## DISCUSSION

### I.  The search warrant authorized a search of Jason Cofield's trailer and shed.

The Magistrate Judge's recommendation finds that the search warrant issued on January 24, 2006, by Lee County Circuit Court Judge Jacob Walker did not authorize a search of the property of Jason Cofield.  The search warrant authorized a search of the:

> "residence of Willis 'Kenny' Cofield, alias, Brian Cofield, alias, Jason Cofield, alias, and Michael Cofield ,alias which is located at 5766 Lee Road 270, Valley, Lee County, Alabama, and any and all vehicles and/or buildings (above ground and below ground) to include two manufactured homes, which is located within the curtilage of said property."

The Magistrate Judge found that the authorization referred to the property of only one person, Kenny

Cofield, and not to Jason Cofield. The court found that although four names were listed in the search warrant, the manner of using the word "alias" after each name indicated that the warrant actually referred to only one person, the first name on the list, Willis "Kenny" Cofield. The Magistrate Judge reasoned that the term "alias" can only mean "otherwise known as," and that the only reasonable interpretation of the language in the warrant was that the four names all referred to the same person. A "reasonable person in the issuing judge's position would not construe the application or affidavit as requesting permission to search the residences of four different people." (*Recommendation of the Magistrate Judge*, at 8).

By so finding, the Magistrate Judge discounted the testimony of Sergeant Surrett, who drafted the warrant, that the use of the term "alias" after every name was meant to protect against spelling errors in the names. Sergeant Surrett testified that the use of the word "alias" after a name was standard procedure for drafting warrants in the Lee County Sheriff's Office. (*Evid. Hr'g Tr.* at 99-100). The Magistrate Judge rejected Sergeant Surrett's explanation as unreasonable. But in so doing, the Magistrate Judge applied an unreasonably narrow interpretation of the language in the warrant and failed to make a close examination of the warrant and affidavit.

Although the use of "alias" as described by Sergeant Surrett did not make sense to the Magistrate Judge, such a use is not uncommon or unusual. Sergeant Surrett testified that he used "alias" in that way as the standard procedure in drafting warrants according to his training. *(Id.)* He testified that he had prepared approximately two hundred such warrants. (*Id.* at 99*; Supp. Evid. Hr'g Tr.* at 46-47). It is reasonable to assume that warrants drafted by the Lee County Sheriff's Department typically are considered by Lee County judges and that a Lee County Circuit Court Judge such as Judge Walker has seen a warrant before that used "alias" in this manner. Sergeant

Surrett also stated that in his experience a judge or magistrate has never before questioned use of the word "alias" in this manner. (*Id*. at 47). Alabama state case law also reveals that the usage of "alias" in this manner is not unique to this case.

For example, the same judge that signed this warrant, Judge Jacob Walker, was the trial judge in at least one reported case which involved another search warrant in which the subject of the warrant was listed by name, with alias immediately afterward, and no additional names. *See Harrelson v. State*, 897 So.2d 1237 (2004). That case involved only one individual listed in the search warrant. But "alias" was used with multiple parties in a search warrant in the same manner as in this case in *Williams v. State*, 611 So.2d 1119 (1992). Some reported cases in Alabama are even captioned to include use of the term "alias" following a name without listing any additional name. For example, the full caption of *Cooley v. State*, 686 So.2d 546 (1996), in the Southern Reporter is *Larry Wade Cooley, alias v. State*. The appellate issues in these cases do not involve the sufficiency or meaning of the term "alias," but they do show that usage of the term "alias" in the manner described by Sergeant Surrett is not confined to Sergeant Surrett. These examples show that it would be reasonable for Judge Walker, or any Alabama circuit court judge, to be aware of this usage of the word "alias" and to have understood the usage of "alias" in the same way that Sergeant Surrett did when he signed the search warrant.

A close look at the language used in the warrant and affidavit provides further evidence of the most reasonable interpretation of "alias." If "alias" referred only to different names for the same person, then a different name should follow every use of the word "alias." The last name listed in the string of names, "Michael Cofield," is also followed by the word, "alias," without another name after it. If "alias" meant only "otherwise known as," then another name should follow the word

"alias" after Michael Cofield.   And on two occasions in the affidavit Sergeant Surrett described the actions of "Jason Cofield, alias," without listing another name.  This usage is consistent with the use of "alias" as Sergeant Surrett described.  Further, if the use of alias was meant only to string together a real name with a series of false names, the expected string would not have the word "and" before the last name listed.  The expected usage would be "Willis 'Kenny' Cofield alias Brian Cofield alias Jason Cofield alias Michael Cofield," without inclusion of the "and" before listing Michael Cofield. The use of "and" is consistent with meaning multiple people.

Other language in the affidavit makes it reasonable to interpret the search warrant as applying to multiple people.  In the first paragraph of the affidavit, immediately after the sentence listing all of the names, the affidavit describes the "Cofields' address."  Significantly, the affidavit refers to the "Cofields'" address, in the plural, referring back to the multiple people listed in the previous sentence.  If the string of names referred to only one person, then the correct language would have been "Cofield's address," in the singular. The affidavit twice more references (in the fifth paragraph) to the "Cofields' property," in the plural possessive, not singular.  Moreover, in the fourth paragraph, the affidavit refers to the activities of Jason Cofield "along with Brian Cofield," a clear reference to two different people named Jason Cofield and Brian Cofield, not one person with two names.  The affidavit also lists the names in a different order.  In the affidavit, Jason Cofield is listed first, while in the warrant lists Kenny Cofield first.  This listing evidences that multiple people are potential subjects of the search warrant; not just one person with a real name followed by a series of false names.

The Magistrate Judge further found that there "is nothing in the four corners of the affidavit which shows there existed a fair probability that Jason Cofield's residence would contain evidence

7

of the crime of manufacturing methamphetamine or that Jason Cofield's residence was the object of the warrant." (*Recommendation of the Magistrate Judge*, at 8). The only explanation for this finding is the interpretation that all references to Jason Cofield in the warrant and affidavit are actually references to Kenny Cofield. The affidavit itself references Jason Cofield by name through two traffic stops which produced evidence of methamphetamine production and a witness who stated that Jason Cofield was engaged in the production of methamphetamine.

The Magistrate Judge also appears to find that the address 5766 Lee Road 270 applies only to Kenny Cofield. The testimony at the hearing of Sergeant Surrett established clearly that, based on the evidence on file in the public records of Lee County, 5766 Lee Road 270 was the address of Jason Cofield. Multiple people can live in multiple structures at one address and the warrant indicated that multiple dwelling structures were believed to be at that address. Jason Cofield's driver's license and other documents listed his address as 5766 Lee Road 270. A search of the county's public records revealed that 5766 Lee Road 270 was a single plot of land. The public records did not disclose any subdivision of this plot into lots owned by the individual Cofields. Based on these records, the warrant is correct. Sergeant Surrett also testified to his personal familiarity with the Cofield property and his belief, based on that familiarity, that 5766 Lee Road 270 was one parcel of land where Kenny Cofield and Jason Cofield lived in different structures. (*Evid. Hr'g. Tr.* at 73, 76-77, 80-86)

The most reasonable interpretation of the language used in the search warrant is that it applies to multiple people believed to be living in multiple structures at the same address. Any ambiguities or errors in that description are not fatal to the warrant's authorization to search Jason Cofield's property. The search warrant must not be evaluated in such a manner as to expect perfection. In this

case, even so minor a change as to add an "s" to change "residence" to "residences" in the description of the land to be searched might have convinced the Magistrate Judge that the warrant applied to multiple people and their structures. Or the use of a semi-colon after the word "alias" instead of a comma in the list of names in the description might have made it clear that the names referred to different individuals. The validity of a search warrant and admission of relevant evidence of criminal activity should not depend on technicalities as slight as the absence of an "s" or the use of commas instead of semi-colons.

Indeed, the Supreme Court has "recognized the need for some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Maryland v. Garrison*, 480 US 79, 87 (1987). Officers must base their descriptions in the warrant on the most accurate information available to them at the time, as Sergeant Surrett did in this case. "A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers." *United States v. Burke*, 784 F.2d 1090 (11th Cir.1986). A disagreement over the interpretation of the word "alias" is not such an error that it should invalidate the warrant's authorization to search Jason Cofield's property. The warrant is drafted in such a way that it was clear to Sergeant Surrett, the leader of the search, as to what property and persons were to be searched. "The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may 'with reasonable effort ascertain and identify the place intended.'" *Id*. (citing *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir.1985)). As such, the description used by the warrant in this case, although not perfect, meets that requirement and is constitutionally sufficient.

**II.  The search of Jason Cofield's shed was permitted by exigent circumstances.**

Even if the search warrant did not authorize a search of Jason Cofield's shed (although the United States asserts that it does), the officers were permitted to conduct a search of the shed based upon exigent circumstances.  Eleventh Circuit precedent teaches that a warrantless search may be conducted when there is probable cause to believe that exigent circumstances, such as a threat to the safety of others, exist.  *See United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir., 2002); *United States v. Davis*, 313 F.3d 1300, 1302 (11th Cir., 2002).  "[E]mergency situations involving endangerment to life fall squarely within the exigent circumstances exception." *Holloway*, at 1337. The Eleventh Circuit further explained in *Holloway*, "Although the Fourth Amendment protects the sanctity of the home, its proscription against warrantless searches must give way to the sanctity of human life." *Id.*  The standard for officers to use when determining if a warrantless entry is necessary is one of reasonableness, based on the facts available to the officers at the time.  Officers must evaluate "the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." *Id.* at 1339, quoting 3 Wayne LaFave, <u>Search and Seizure</u> §6.6(a), at 391 (3d ed. 1996).

"As long as the officers reasonably believe an emergency situation necessitates their warrantless search, whether through information provided by a 911 call or otherwise, such actions must be upheld as constitutional." *Holloway* at 1340. The government must prove that probable cause and the exigent circumstances exist.  *Davis* at 1302.  If entry into a building is permitted because of exigent circumstances, then all evidence in plain view of the officer may be seized. *Glover v. Eight Unknown D.E.A. Agents/Drug Task Force Agents from Birmingham, Alabama Task Force*, No. 06-13061, 2007 WL 559805 at *4 (11th Cir. Feb. 23, 2007) (citing *United States v.*

*McGough*, 412 F.3d 1232, 1238 (11th Cir. 2005)).

A review of the facts in this case shows that Investigator Jordan and the other officers had probable cause to believe that there was a threat to human life and that exigent circumstances required a search of the shed owned by Jason Cofield. At the time, Investigator Jordan was aware of evidence that Jason Cofield was suspected of operating a methamphetamine lab. He testified that in his experience, he knows that methamphetamine labs and manufacturing pose special risks. The process involves a dangerous process of mixing and burning different chemicals. This process creates a high risk of explosion, fire, or chemical contamination. In addition, in the experience of seasoned officers such as Investigator Jordan, individuals involved in the production of methamphetamine commonly rig "booby traps" to protect their methamphetamine supply or laboratory. These traps can include explosives designed to explode upon entry by any person into the laboratory. As just one specific example, Investigator Jordan was personally familiar with a previous investigation in the same part of Lee County in which a methamphetamine lab was located in a shed wired with 30 sticks of dynamite. (*Supp. Evid. Hr'g. Tr.* at 6-8). Such was the risk that suspected methamphetamine labs that an Alabama Bureau of Investigation explosives expert accompanied the law enforcement officers on the search.

Added to this general knowledge of the dangers of methamphetamine labs, Investigator Jordan had been informed by a witness that Jason Cofield was involved in the manufacture of methamphetamine and that a shed on the Cofield property was "wired with some type of explosive." A confidential informant had told Sergeant Surrett that he had smelled ammonia coming from the direction of the Cofield property. Stops of two vehicles driven by Jason Cofield within a month of the search had located evidence of items involved in the manufacture of methamphetamine in the

vehicles. Investigator Jordan was aware of these facts related to Jason Cofield's involvement in manufacturing methamphetamine and that a shed on the property was potentially wired with explosives.

On January 24, 2006, Investigator Jordan determined additional facts. Prior to entry into the shed owned by Jason Cofield, Investigator Jordan testified that he smelled ammonia, a common chemical related to the production of methamphetamine. He could observe that the shed had motion sensors, closed circuit surveillance cameras, and electrical power. He could also see a corroded tank behind the shed. These observations, which were in plain view to any person who observed the shed, were consistent with the shed being used to manufacture methamphetamine. (*Id.* at 13-16). When combined with the previous information, these observations, gave Investigator Jordan probable cause to believe that methamphetamine was being manufactured in that shed and that the shed was wired with explosives as the witness had described.

At the time that Investigator Jordan made these observations, the search of the Cofield property was ongoing. Approximately 40 law enforcement officers were present in the general area.(*Evid. Hr'g. Tr.* at 107) Although the shed was in a rural area, the other Cofield homes were in close proximity. For example, Kenny Cofield's house was only 800 feet away. The suspected presence of chemicals used in the production of methamphetamine, the suspected presence of explosives, and the known volatility of the methamphetamine production gave Investigator Jordan probable cause to believe that the shed posed an immediate danger to other persons in the area. Such was his fear of booby traps and explosives, that he engaged an explosives expert to breach the shed's windows with a water cannon first. (*Supp. Evid. Hr'g. Tr.* at 17)

The Eleventh Circuit Court of Appeals has recently decided a case involving exigent

circumstances and methamphetamine production.  In *Glover v. Eight Unknown D.E.A. Agents/Drug Task Force Agents from Birmingham, Alabama Task Force,* No. 06-13061, 2007 WL 559805 (11th Cir. Feb. 23, 2007), the Court of Appeals determined that exigent circumstances existed when agents heard a confidential informant wearing a wire begin to cough while inside a home suspected of being a methamphetamine lab.  Based on the coughing, a tip they had received that the owner of the home was producing methamphetamine and ordering chemicals, and that the agents smelled chemicals around the house, the court found that exigent circumstances existed to enter the home to protect the confidential informant's health and safety.  The court recognized the volatility and dangers of chemicals used in methamphetamine labs.  The court cited other circuits where the volatility and danger of methamphetamine production has been used to find exigent circumstances.  *Glover* at *3 (citing *United States v. Atchley,* No. 04-6521, 2007 WL 148761 at *7 (6th Cir. Jan 23, 2007); *United States v. Rhiger*, 315 F.3d 1283, 1290 (10th Cir.2003); *United States v. Spinelli,* 848 F.2d 26, 30 (2d Cir.1988)).

This case provides an even stronger case of exigent circumstances than in *Glover*.  Here, Investigator Jordan had specific information that there could be explosive booby traps in the shed.  The owner of the shed, Jason Cofield, had personally been driving vehicles which contained items consistent with the production of methamphetamine and had been named by a witness as being involved in producing methamphetamine.  A confidential informant had noticed the smell of chemicals coming from the Cofield property.  Investigator Jordan smelled ammonia coming from the area of the shed, noticed surveillance cameras and motion lights, and observed a corroded tank.  And approximately 40 law enforcement officers were in the area engaged in a search.  The risk of explosive booby traps, added to the known volatility of a suspected methamphetamine lab, put all

of those officers in danger. Officers acted reasonably in then entering and searching the shed to ensure the safety of the officers and people in the area.

The Magistrate Judge's recommendation supports the existence of exigent circumstances in this case up to a point and agrees that the suspicion of booby traps created exigent circumstances that allowed the officers to breach the windows of the shed with a water cannon. However, the Magistrate Judge goes on to say that these exigent circumstances ended as soon as the windows were broken by the water cannon and no explosion occurred. (*Recommendation of the Magistrate Judge*, at 12). This view of the situation is incomplete. The exigent circumstances did not end as soon as the windows were breached with the water cannon. At that point in time, the officers had not eliminated the potential threat and could not know if there were explosives hidden inside the building or if the booby trap was set on some other part of the building, such as the door. Only entry into the building and a thorough search of the shed could determine if there was a booby trap or explosive device inside. In fact, the risk was so high that the initial search of the shed was made by a law enforcement officer in a chemical protective suit, after the water cannon was used on the windows. The magistrate's recommendation is inconsistent in finding that exigent circumstances existed to allow breach of the windows but not breach of the door.

Exigent circumstances existed for Investigator Jordan and other officers to enter and completely search Jason Cofield's shed to ensure that there were no explosive booby-traps present in a suspected methamphetamine lab. They would have been derelict in their duty if they had not continued with their entry and search of the shed for explosives and booby traps after breaching the windows. Once they were lawfully in the shed under these exigent circumstances, the ATV and weapons found in the shed were in plain view, were lawfully seized as evidence, and are admissible

14

at trial.

Simply stated, the Magistrate's Judge's Report and Recommendation fails to consider the entirety of the exigent circumstances faced by Investigator Jordan; and, fails include any "plain view" analysis based upon the officers' obvious need to secure the inside of Cofield's shed from potential booby-trap.

## III. Investigator Jordan acted in good faith reliance on the search warrant obtained by Sergeant Surrett when he conducted the search of Jason Cofield's shed.

In the alternative to exigent circumstances, the fruits of the search are still admissible because Investigator Keith Jordan acted in good faith reliance on a search warrant. *See United States v. Leon*, 468 US 897 (1984). *Leon* created an exception to the exclusionary rule which held that evidence need not be suppressed if officers acted in "objective good faith" in obtaining a search warrant and then acting within the scope of that warrant. *Id.* The rationale for this decision was that excluding evidence obtained by an officer who had obtained a signed search warrant later determined to be invalid would not serve any deterrent purpose. Law enforcement officers could not be expected to second-guess a magistrate or judge's decision to approve a search warrant. The standard to apply is whether the officer's reliance on the warrant was "objectively reasonable." *Id.* at 921-22

However, *Leon* also described four situations in which exclusion of evidence would still be appropriate, despite an officer's reliance on a signed search warrant. *Id*. at 923. These four situations are when the affiant intentionally misleads the issuing judge with information he knows to be false or exhibits a reckless disregard for the truth in the affidavit; when the judge abandons his judicial role; when the affidavit is so lacking in indicia of probable cause that it is unreasonable to believe that any magistrate or judge would issue a search warrant; and when the warrant itself is so

deficient on its face that an executing officer could not reasonably believe it to be valid. *Id.*

In this case, there was a search warrant signed by a judge that specifically named Jason Cofield. This fact supports *Leon's* good faith exception if reliance on the warrant was objectively reasonable. The Magistrate Judge found that the first two exceptions to *Leon* did not apply–there was no evidence of intentional misleading of the judge or reckless disregard for the truth and no evidence that the judge abandoned his judicial role. However, upon reaching the next two categories, the magistrate found that there could be no good faith on the part of Investigator Jordan in searching Jason Cofield's shed because Jordan did not actually read the warrant or affidavit. As a result of not reading the warrant or affidavit, Investigator Jordan "could not have reasonably and in good faith relied on the warrant or the affidavit." (*Recommendation of the Magistrate Judge*, at 14).

The magistrate's conclusion relies on the United States Supreme Court's decision in *Groh v. Ramirez*, 540 US 551 (2004). (*Id.,* at 14-15). Distinguishable from the case at bar, the agent in *Groh* who led a search of a residence could not rely on the good faith exception because the warrant was so obviously defective on its face. The warrant failed to include any description of the items to be searched for. In its decision, the Supreme Court made reference to the duty of a search leader to read a search warrant prior to execution to find any glaring errors. *Groh* at 556, 563 n. 6. Critically, the Magistrate Judge's recommendation in the instant case improperly extends *Groh* to require that all officers who execute a warrant must first read it. Such an interpretation of *Groh* is incorrect.

*Groh's* language regarding the duty of an officer to read a search warrant applies only to the law enforcement officer who is the **leader of the search**. The *Groh* decision never explicitly states

that all officers involved in a search must actually read the warrant and affidavit.  A review of the Court of Appeals decision that *Groh* upheld makes it clear that *Groh's* requirement of reading a warrant applies only to the search leader.

*Groh* upheld the decision of the Ninth Circuit Court of Appeals in *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir.2002).  The case was originally a *Bivens* action filed by a homeowner against law enforcement officers involved in a search of a home pursuant to a signed search warrant.[1]  The homeowner alleged a violation of his constitutional rights by the search, naming all of the members of the search team.  In the context of whether the officers involved in the search were entitled to qualified immunity, the court considered the validity of the search warrant and the officers' reliance on it. The court first found that the search warrant itself was invalid because it did not contain a description of the items to be searched for. *Id*. at 1026.  Then the Court considered whether the officers acted in good faith in relying on the signed search warrant.

The Ninth Circuit found that all of the members of the search team, except the leader, *Groh*, were entitled to have relied in good faith on the signed search warrant.  As a result they were all entitled to qualified immunity.  *Id*. at 1028.  Only *Groh* was not entitled to qualified immunity.  The court found that the officers who were merely involved in the execution of the search warrant were required to inform themselves as to the basis and scope of the search warrant, but were not actually required to have read it.  A briefing on the search warrant by the leader of the search was sufficient for them to rely in good faith on the search warrant.  In contrast with the leaders of a search team,

---

[1]Although the case involved a civil claim and the issue of qualified immunity, the Supreme Court has held that the standard of objective reasonableness involved in a determination of qualified immunity is the same as that applied in a good faith analysis under *Leon*. *Groh* at 1294 n.8.

"[l]ine officers, on the other hand are required to do much less.  They do not have to read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid." *Id.* at 1028 (citations omitted). The leader of the search, *Groh*, was required to have actually read the search warrant to look for any glaring errors. *Id*. at 1027.

Thus, when the case reached the Supreme Court, the only issue was whether the leader of the search team, *Groh*, had acted in good faith.  The requirement to actually read the warrant applied only to search leader *Groh*.  In affirming the decision of the Court of Appeals, the Supreme Court required only the leader of the search team to read the warrant; the Supreme Court did not overturn the Court of Appeals determination that other members of a search need not read the warrant - but could rely on a briefing from the search leader.

Consistent with *Leon*, *Groh's* teaching requires only the leaders of a search team to read a warrant, while allowing rank and file members to become informed about the warrant through a briefing or other means.  *Leon*  recognizes that officers cannot be expected to second guess the decisions of judges and magistrates to approve search warrants. *See Leon* at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.").  This decision also recognizes that it is reasonable for the members of a search team to rely on the briefings they receive from other officers on the scope of a warrant and that it has been lawfully approved.  The Eleventh Circuit followed this reasoning in *Harstfield v. D.G. Lemacks*, 50 F.3d 950, 956 (11th Cir.1995), holding that officers who followed the leader of search in execution of a search warrant on an incorrect house acted in good faith in their reliance on the leader of the search and were entitled to qualified immunity. The Ninth Circuit has also held in other decisions that individual members of a search

team do not have to actually read the warrant so long as they have become informed of the scope and nature of the warrant.  *See Motley v. Parks*, 432 F.3d 1072, 1081-82 (9th Cir.2005); *Marks v. Clarke*, 102 F.3d 1012 (9th Cir.1997); *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir.1986).

The testimony received in this case is that the Cofield search leader was Sergeant Donnie Surrett, not Investigator Jordan.  (*Evid. Hr'g. Tr.* at 107; *Supp. Evid. Hr'g Tr.* at 8).  In his testimony, Sergeant Surrett noted that he was a Sergeant and outranked Investigator Jordan who was not. (*Supp. Evid. Hr'g. Tr.* At 48).  Investigator Jordan was merely a member of the search team who was tasked with searching a particular place.  (*Id.* at 8).  Just because he searched the shed which revealed the most evidence does not mean that he was the leader of the search.  He attended a briefing on the search at which he was informed the search warrant was signed and extended to the home of Jason Cofield.  (*Supp. Evid. Hr'g Tr.* at 8, 9-10, 48-49).  He was also personally familiar with the facts underlying the probable cause to search Jason Cofield's property from having participated in the investigation.  He was entitled to rely in good faith on the briefing he received from Sergeant Surrett.  Because he was not the leader of the search team for the entire Cofield property, he was under no duty to actually read the warrant, as the Magistrate Judge's decision would require.

The magistrate incorrectly ended his good faith analysis after determining that Investigator Jordan did not read the warrant and thus was not entitled to claim that he acted in good faith.  Continuing that analysis shows that the other situations described in *Leon* did not occur in this case.  The affidavit did not lack indicia of probable cause as it included information relating to Jason Cofield's possession of materials consistent with methamphetamine production and statements from a named witness and confidential informant that corroborated Jason Cofield's participation in the manufacture of methamphetamine.  The ambiguity claimed in the warrant, caused by different

19

versions of the meaning of "alias" was not so facially deficient that an officer could not reasonably rely upon it.  In *Groh*, the error was a missing list of items to be seized.  In the case at bar, the problem was one purely of semantics. Second-guessing the semantics of a warrant does not rise to the level of a facial defect that is so glaring that no reasonable officer could rely on it.

Applying this analysis to Sergeant Surrett requires the same conclusion - Sergeant Surrett as leader of the search of the Cofield property met the *Groh* requirement and read the warrant.  Any errors caused by use of the word "alias" were not so glaring that it was objectively unreasonable for Sergeant Surrett to rely on the warrant and interpret it to approve a search of Jason Cofield's property.  It was objectively reasonable for Sergeant Surrett to interpret the search warrant to mean what he intended when he drafted it–that it authorized a search of Jason Cofield's property. As a result, Sergeant Surrett and Investigator Jordan acted in an objectively reasonable manner and were entitled to rely in good faith on the search warrant when to authorize a search of Jason Cofield's shed.

Finally, the Magistrate Judge's Report and Recommendation grafts a completely new responsibility on law enforcement.  This new responsibility requires any member of a search team tasked with executing a search function delegated to him by the search team leader to question the validity of a judicially approved search warrant.  According to this new responsibility, failure to question the validity of the search warrant may result in the suppression of evidence found by a particular officer; or, strip that officer of qualified immunity and subject him to personal liability. In the light of *Leon* and its progeny, this new responsibility may have serious and deleterious effects on law enforcement.

**CONCLUSION**

As the Supreme Court has stated, application of the exclusionary rule to suppress evidence in a criminal case should be a "last resort," not the "first impulse." *Hudson v. Michigan*, 126 S.Ct. 2159, 2163 (2006). In this case, the officers who searched Jason Cofield's shed acted in accordance with a properly signed search warrant which authorized the search. In the alternative, even if the search warrant did not actually authorize the search of Jason Cofield's shed, the officers acted in good faith reliance upon the search warrant and a reasonable belief that exigent circumstances permitted the search. There is no reason to apply the "last resort" and exclude the evidence seized in Jason Cofield's shed. Therefore, the United States respectfully objects to the Magistrate Judge's recommendation to suppress the firearms and ATV discovered in Jason Cofield's shed and requests that the Defendant's Motion to Suppress be DENIED.

Respectfully submitted this 5th day of March, 2007

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Verne H. Speirs
VERNE H. SPEIRS
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
verne.speirs@usdoj.gov

/s/ Matthew W. Shepherd
MATTHEW W. SHEPARD
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
matthew.shepard@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

UNITED STATES OF AMERICA    )
    )
    v.    ) CR. NO. 03:06CR208-MEF
    )
JASON EDWARD COFIELD    )

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2007, I electronically filed the following Jury Instructions

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

Pate DeBardeleben.

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Verne H. Speirs
VERNE H. SPEIRS
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
verne.speirs@usdoj.gov