IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:06-cr-208-MEF |
| | ) | (WO) |
| JASON EDWARD COFIELD | ) | |

**MEMORANDUM OPINION AND O R D E R**

**INTRODUCTION**

In this case, Defendant Jason Edward Cofield ("Jason")[1] seeks to suppress any and all evidence obtained during a search of his residence. The search warrant, which was issued by a state court judge, asserted that there was probable cause to believe that Jason was involved in the manufacture and distribution of methamphetamine at his residence. While the police did not find the object of the warrant, the search of the shed behind Jason's residence did yield illegally possessed firearms[2] and a stolen All-Terrain Vehicle. The police also recovered a stolen pick-up truck in the woods behind the shed.

This cause is before the Court on Jason's Motion to Suppress (Doc. # 22) filed on September 29, 2006. In his Recommendation (Doc. # 41), Magistrate Judge Coody recommended that the motion to suppress be granted in part as to the items recovered from the shed and denied in part as to the pick-up truck found in the woods. The Government

---

[1] Given that Jason's father and brothers are involved, the Court will refer to each member of the Cofield family by their first names.

[2] Jason has a prior felony conviction.

objects to this recommendation. Doc. # 45.[3] After careful review of the motion, the recommendation, the objections, the evidentiary record, and all the briefs filed in support and in opposition to the motion and the recommendation, it is the judgment of the Court that the Motion to Suppress is due to be GRANTED IN PART and DENIED IN PART, the Recommendation is due to be ADOPTED on other grounds, and the Government's objections are due to be OVERRULED.

## DISCUSSION

*A. Objection as to the Warrant*

The Cofield family property sits on 119 acres of contiguous land on Lee Road 270 in Valley, Alabama. Jason lives on this large property alongside his father, Kenny, and two of his brothers, Brian and Kevin. The three brothers and their father live in separate residences

---

[3] The Government objections center on the legal conclusions made by the Magistrate Judge. While the Government argues additional facts, it does not specifically object to the factual narrative in the Recommendation. Upon careful review of the record, the Court finds that the Magistrate Judge provided a comprehensive factual narrative that accurately reflects the record in this case. Accordingly, the Court **adopts** the recitation of the facts set forth in the Recommendation.

With respect to the recommendation that the motion to suppress be denied with respect to the stolen pick-up truck found in the woods -- a recommendation to which no objections were filed -- the Court concurs with the Magistrate Judge. The truck was found in the woods and not within the curtilage of Jason's residence. As "there is no legitimate expectation of privacy in ... open fields, even if fenced, unless they are part of the curtilage, or the immediate appurtenances, of a home," *United States v. Long*, 674 F.2d 848, 853 (11th Cir. 1982), the Recommendation is due to be ADOPTED as to seizure of the truck in the woods and the motion to suppress is due to be DENIED to the extent it is directed to the seizure of the stolen truck.

and each have their own mailboxes with unique street addresses listed on them.[4] The warrant granted a search of the following:

> The residence of Willis "Kenny" Cofield, alias, Brian Cofield, alias, Jason Cofield, alias, and Michael Cofield, alias, which is located at 5766 Lee Road 270, Valley, Lee County, Alabama, and any and all vehicles and/or buildings (above ground and below ground) to include two manufactured homes, which is located within the curtilage of said property.

In his Recommendation, Judge Coody concluded that the search warrant did not properly authorize the search of Jason's trailer and shed. Specifically, where the search warrant used the word "alias" to separate a string of names, the warrant referred only to the first name listed -- that of the Jason's father, Kenny -- and thus did not authorize the search of Jasons's property as well an any property belonging to the sons of Willis "Kenny" Cofield. Using definitions of "alias" from *Black's Law Dictionary* and the common understanding of the word, Judge Coody determined that "a reasonable person in the issuing judge's position would not construe the application or affidavit as requesting permission to search the residences of four different people." Doc. # 41 at 8.

The Government objects to this finding on the grounds that the use "alias" between the different names is not uncommon or unusual. The Government argues that Judge Coody "applied an unreasonably narrow interpretation of the language in the warrant." Doc. # 45

---

[4] Kenny lives in a house at 5766 Lee Road. Jason lives in a mobile home with his wife and two children at 5796 Lee Road. Jason's residence is approximately 800 feet away from Kenny's house. Brian and Kevin live in trailers at, respectively, 5842 Lee Road and 5906 Lee Road.

at 5. First, the Government implies that because the investigating officer had used "alias" in that way before and had prepared two hundred similar warrants, judges in Lee County, Alabama would have understood what alias meant in that context. This, however, is a faulty presumption. Simply because something is commonly done one way does not give it the imprimatur of legitimacy.

As the government correctly notes, the "Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may 'with reasonable effort ascertain and identify the place intended.'" *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986) (quoting *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir. 1985). Therefore, the question becomes whether the use of "alias" describes Cofield's property in such a manner that with "reasonable effort" the officers could "ascertain and identify" his residence. The Court finds that it did not.

The Government's best argument is that "[i]f 'alias' referred only to different names for the same person, then a different name should follow every use of the word 'alias.'" However, as the Government notes, where "alias" connects a string of names, the last name in the list, that of Michael Cofield, is followed by the word "alias." Furthermore, the government contends that at other places in the affidavit attached to the warrant, the plural form of Cofield is used to describe "Cofields' address" and "Cofields' property." This use of Cofield in the plural "makes it reasonable to interpret the search warrant as applying to multiple people." Doc. 45 at 7. While this is certainly an astute argument, it is not reasonable to expect officers to make such deductions when ascertaining and identifying the

4

place to be searched. The Court agrees with the Government that the "search warrant must not be evaluated in such a manner as to expect perfection," Doc. 45 at 8, but a search warrant must not be so complex as to require a lawyer to decipher it. Because the "curtilage" of Willis "Kenny" Cofield's residence located at 5766 Lee Road 270 does not objectively include the residence of Jason Cofield or any building adjacent to Jason's home, the Government's objections as to the warrant are thus due to be OVERRULED. The Court ADOPTS the Recommendation to the extent it finds that the search warrant did not authorize the search of Jason's trailer and shed.

*B. Exceptions to the Warrant Requirement*

The Government argues in the alternative that even if the warrant was defective, exceptions to the warrant requirement -- the good faith exception in *United States v. Leon,* 468 U.S. 897 (1984) and the exigent circumstances exception in *Warden v. Hayden*, 387 U.S. 294 (1967) -- merit denial of the motion to suppress. The Court will take each exception up in turn.

*1.    Good Faith*

The United States Supreme Court held in *Leon* that the exclusionary rule should not be applied when there is "objectively reasonable reliance [by the searching officers] on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. Judge Coody dismissed the applicability of this exception because "the fundamental problem in this case, which the government cannot overcome, is that [Investigator Keith] Jordan [, the officer who actually performed the search of Jason's residence and shed,] testified ... he never read the warrant or

5

affidavit." Doc. # 41 at 14. Therefore, the officer "could not have reasonably and in good faith relied on the warrant or the affidavit." *Id.*

The Government objects to this determination because the Supreme Court decision on which Judge Coody relied, *Groh v. Ramirez*, 540 U.S. 551 (2004), is distinguishable from the case at bar. Specifically, while *Groh* focused on the duties of a *leader* of a search team to read and understand a warrant, this duty does not extend to other members of the search team. The Government admits that *Groh* never explicitly states this point, but that this was the tenet of the Ninth Circuit Court of Appeals decision *Groh* upheld.[5] The Government is correct as to this point. There is nothing in *Groh* to suggest that the duty of a search team leader applies to the officers underneath him, such as Investigator Jordan. Furthermore, as the record demonstrates, Investigator Jordan was thoroughly briefed as to the search he was to conduct. Consequently, there is no requirement that Investigator Jordan actually read the warrant. Instead, any duty to read the warrant rested squarely with Sergeant Donnie Surrett, the lead officer. As Sergeant Surrett read the warrant -- indeed, he was the one who drafted it in the first place -- the requirements set out in *Groh* are met.

---

[5] In that opinion, *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir. 2002), the Ninth Circuit found, in the context of whether particular members of a search team were entitled to qualified immunity:
> [l]ine officers ... are required to do much less. They do not have to actually read or even see the warrant; they may accept the word of their superiors that they have a warrant and that it is valid. So long as they make inquiry as to the nature and scope of the warrant, their reliance on leaders' representations about it is reasonable.

*Ramirez*, 298 F.3d at 1028 (citations and quotations omitted).

Nonetheless, the Court must adopt the Magistrate Recommendations on different grounds. While the consequences of the *Leon* good faith exception are that most searches conducted pursuant to a warrant, even a defective one, will rarely require suppression,[6] the *Leon* court identified certain circumstances where suppression is still appropriate. One such situation is where "a warrant [is] ... so facially deficient -- i.e. in failing to particularize the place to be searched or things to be seized -- that the executing officers cannot reasonably presume it to be valid." *Id*. The Court finds that this is such a situation. Even though Sergeant Surrett was the officer who wrote the warrant, the test here is an objective one. While he may have had a genuine subjective belief that the warrant was valid, this presumption was not reasonable given that the warrant is so facially deficient. Therefore, the Recommendation is due to be ADOPTED to the extent that it recommends the motion to suppress be granted and the objections are due to be OVERRULED.

   2.   *Exigent Circumstances*

The Government argues that even if this Court finds that the good faith exception to the warrant requirement is inapplicable, the search of Jason's shed was permitted by exigent circumstances. Specifically, the Government asserts that exigent circumstances existed to permit the search when Investigator Jordan smelled ammonia, noticed that the shed was electronically monitored, and saw that there was a corroded tank behind the shed. These

---

[6] Indeed, the Eleventh Circuit recently noted that the *Leon* case "is the premier example of the distinction between finding a constitutional violation and excluding evidence based on that violation." *United States v. Herring*, No. 06-10795, slip op. 2851, 2854 (11th Cir. July 17, 2007).

observations, coupled with prior knowledge about Jason's drug-related activities, gave the officers a reasonable basis to believe that there was an exigency justifying a warrantless search.

While Judge Coody agreed that there was an exigency to the extent the officers reasonably believed the shed was booby trapped, the mere prospect of a methamphetamine lab within the shed did not justify the breach of the door. The Government objects here by pointing to the danger posed by methamphetamine labs and citing analogous case law. *See, e.g.*, *Glover v. Eight Unknown D.E.A. Agents/Drug Task Force Agents*, 225 Fed. Appx. 781 (11th Cir. Feb. 23, 2007) (holding that a warrantless entry into a residence was justified under the exigent circumstances exception when agents first heard their confidential informant coughing while inside of a home suspected of being a methamphetamine lab and then smelled chemicals). The Court agrees with Judge Coody and ADOPTS his recommendation that the resulting evidence obtained from the shed must be suppressed, but it does so on different grounds than those articulated in the Recommendation.

The discussion over whether there was an exigency to continue with the search of the shed misses the crucial question: how can there be an exigency if the police had no right to be there in the first place and only discovered the exigency after they arrived?[7] Given this

---

[7] In its Order entered on May 1, 2007, this Court specifically instructed the parties to address this issue. Doc. # 65 ("The parties are instructed to address the following issue: assuming the search warrant did not establish probable cause for the search of the shed within the curtilage of the defendant's residence may the government nonetheless invoke the exigent circumstances exception to the warrant requirement."). Neither the defendant nor the Government specifically addressed this issue in their supplemental briefs. The Government did argue, however, that "[e]ven if the warrant only authorized law enforcement

Court's finding that the warrant was invalid on its face and that the good faith exception is inapplicable, the police's entry within the curtilage of Jason's residence was illegal.[8] Therefore, the police cannot then rely on any exigency that arose during the course of their illegal presence.[9] For that reason, the exigent circumstances exception to the warrant requirement is inapposite.

---

to be present at Kenneth Cofield's residence there were no impediments to viewing Jason Cofield's trailer and shed from Kenneth Cofield's residence, or from the open fields and woods of the property." Doc. 71-1 at 9 n.2. While that may be true, the Government admits that Investigator Jordan's observations -- the observations that serve as the basis for the reasonable belief that an exigency existed -- were made after the officer had entered the curtilage of Jason's residence. Therefore, the fact that the police could have viewed Jason's shed from a lawful distance is of no consequence. What matters is if viewing the shed from a such a distance, the officers could have formed a reasonable basis to believe that there was exigency permitting a warrantless search of Jason's shed.

    The Government also argues that "because officers had received a specific tip that Jason Cofield operated a methamphetamine lab and had a white shed wired with explosives on the Cofield property, they had a reasonable fear for their safety at the time of the search of Kenneth Cofield's residence adjoining Jason Cofield's trailer and shed." *Id.* Therefore, the officers were allowed to make a protective sweep of the property surrounding Kenny's residence. The Government points to a Fourth Circuit case *United States v. Bernard*, 757 F.2d 1439 (4th Cir. 1986), where a protective sweep around a property suspected of marijuana production was allowed. *Bernard*, however, is easily distinguishable from these fact. In *Bernard*, the warrantless protective sweep was of the curtilage of the person whose residence the police were already on. Applying *Bernard* to this case would allow a warrantless protective sweep of the curtilage of Kenny's residence, but not necessarily someone else's residence

    [8] As Judge Coody pointed out, the shed fell within the curtilage of Jason's residence. *See United States v. Williams*, 581 F.2d 451, 454 (5th Cir. 1978).

    [9] An analogous situation would be where the police entered a building without a warrant and without any probable cause, but once inside, discovered an exigency permitting the search of an interior room. In such a situation, as it should be in the instant case, the fruits of that search of the interior room should not be admissible. To find otherwise would give the police license to search anything it desired, so long as it found an exigency once inside.

## CONCLUSION

As unfortunate as it may be for the government and for law enforcement to maneuver through the minefield of technical and legal requirements associated with search warrant law, this court cannot ignore the protections afforded by the Fourth Amendment against unconstitutional searches conducted in such a careless manner as was done in this case.

Accordingly, it is hereby ORDERED as followed:

(1) The Recommendation (Doc. # 41) is ADOPTED and MODIFIED as set out in this Memorandum Opinion and Order.

(2) The Objections (Doc. # 45) are OVERRULED.

(3) The Motion to Suppress (Doc. # 22) is GRANTED with respect to the evidence seized in the search of the defendant's residence and shed.

(4) The Motion to Suppress (Doc. # 22) is DENIED with respect to the stolen pick-up found in the open fields outside of the curtilage of the defendant's residence.

DONE this the 7th day of September, 2007.

                                        /s/ Mark E. Fuller
                                  CHIEF UNITED STATES DISTRICT JUDGE